### Swift vs. Eckford, executrix, &c. and others.

Where S. assumed the payment of E.'s debt to an incorporated company and conveyed lands by absolute deed, to one of the officers of the company, but the conveyance was only intended as a mortgage to secure the payment of the debt to the company, and the land was afterwards conveyed by the grantee to another officer of the company, who knew the object for which the first conveyance was made; *Held*, that the claim of S. against the personal reprerentatives of E., to be re-paid the debt thus assumed, was separate and distinct from his claim against the holder of the legal title to the land, and the company, to redeem the mortgage; and that the joinder of both claims in one suit rendered the complainant's bill multifareous. It would have been otherwise if E. had agreed to pay the debt to the company, or to indemnify S. against liability on the mortgage.

If a joint claim against two or more defendants is improperly joined in the same bill with a separate claim against one of the defendants only, in which the other defendants have no interest, and which is wholly unconnected with the claim against them, all or either of the defendants may demur to the whole bill for multifariousness.

An amendment to a sworn bill by striking out allegations in the bill which the complainant has verified by his oath, will not be allowed by the court of chancery, except under very special circumstances.

April 5.    The bill in this cause was filed against the personal representatives of Henry Eckford, deceased, and against James

1836.

Swift
v.
Eckford.

E. Dekay, one of the representatives, in his individual capacity, and against the receivers of the Life and Fire Insurance Company of the city of New-York. The complainant alleged, in his bill, that in May, 1826, he conveyed to H. Eckford, by an absolute deed, about six acres of land in the city of New-York, but which deed was only intended as a mortgage, to secure the payment of a debt due to the Life and Fire Insurance Company; that Eckford was the president of the company, and a large stockholder therein, and was permitted to manage the affairs and use the funds of the company without consultation or question; and the complainant was the vice president of the company from October, 1824, to July, 1826; that on the first of February, 1826, the complainant had drawn out of the funds of the company, on his own account, with the assent of Eckford, $10,926,10, from which was to be deducted for his salary, for dividends on his stock, and for money paid for the lease of an office, $6937,50; leaving the balance due from him to the company; that he had also drawn out of the funds of the company $20,032,25, on account of Eckford and by his direction, but which was charged to the complainant on the books of the company; that the monies thus drawn out of the company and charged to the complainant, were expended for the sole benefit and account of Eckford, as follows: $11,500 to pay the amount of a loan he had made to purchase the National Advocate, in his own name, but for the account of Eckford; and $6321, to defray the expenses of carrying on the Advocate, and the Patriot which had been united with the Advocate and carried on in the name of Thomas Snowden, at the request of Eckford, making the above mentioned sum of $20,032,25; that in February, 1826, Vermilyea, a director of the company, called upon the complainant with an account made up against him to the first of that month, in favor of the company, showing a balance against him of $30,058,35; and stated that he was requested by Eckford to say to the complainant that the directors of the company were about to be convened, and that his account was too large to be laid before them, and must be reduced; that after several conversations with

Vermilyea, and with Rathbone, another of the directors, who also called upon him at Eckford's request, Vermilyea recommended that the complainant should give his notes, secured by property, and which should be passed to his credit by the company ; that in pursuance of this suggestion he gave his three notes, amounting to $17,500, secured by his stock in the company and by his Williamsburgh Ferry stock, and agreed to give a deed for the six acres of land, to secure the balance of the account ; which deed was afterwards given in the name of Eckford, but without any conversation with him on the subject, except to ask Eckford, as the president of the company, in whose name the deed should be given ; that the Life and Fire Insurance Company and the Williamsburgh Ferry Company both failed, and the stocks of the complainant so hypothecated to the Life and Fire company, thereby became of no value, leaving nothing but the land conveyed to Eckford for the payment of the debt, but which land had not been appropriated for that purpose at the time of filing the complainant's bill ; that, after his account with the company had been thus arranged, the complainant applied to Eckford to have his disbursements on account of the National Advocate re-paid, and the paper transferred to some other person ; that Eckford acceded to this, and the complainant made out his account, amounting to $17,825, exclusive of interest, and omitting a charge of $1000, which was left out by mistake ; that Eckford referred the account to Snowden, who said $5052,31 of the disbursements were on account of the Patriot, which Eckford therefore objected to paying, but proposed to pay the balance of the $17,825, and to leave the disbursements on account of the Patriot for future discussion ; which proposition was acceded to by the complainant, and the Advocate was transferred to Rathbone, who accepted Eckford's drafts in favor of the complainant for $12,772,69, the balance of the account exclusive of the disbursements on account of the Patriot ; that these drafts were afterwards paid to the Life and Fire Insarance Company by Rathbone, and the amount thereof had recently been carried to the credit of the complainant upon the

books of the company; that Eckford afterwards paid the complainant $3000, in part payment of the balance of his disbursements on account of the paper, and the settlement of the residue was deferred and remained unsettled at the death of Eckford, in 1832; that the complainant had recently discovered that the land conveyed to Eckford, as a security for the debt due to the company, was immediately conveyed without consideration to the defendant DeKay, the son-in-law of Eckford, who was a director of the company and well knew the nature and object of the conveyance to Eckford, and who now claimed to be the owner of the land, and refused to convey the same to the complainant; that soon after the failure of the Life and Fire Insurance Company, its officers were enjoined from interfering in its affairs, and at the same time the defendants Hoffman and Lawrence were appointed receivers of the property and effects of the company; that the complainant had applied to the receivers, and offered to pay the balance due from him to the company upon their causing the land to be reconveyed to him, and had also requested DeKay to reconvey the lands and to account to him for the rents and profits thereof; and that he had also requested the personal representatives of Eckford to account with him, and pay the balance due from their testator. The complainant, therefore, prayed that an account might be taken of all the dealings and transactions between him and Eckford; and an account between him and the Life and Fire Insurance Company, and if any part thereof should be found to be the proper debt of Eckford, that his personal representatives might be decreed to pay the same to the complainant; that upon payment of what might be found to be due from the complainant to the company, DeKay might be decreed to reconvey the land to him, and to account to him for the rents and profits thereof; or that the representatives of Eckford might be decreed to pay the complainant the full value of the land, together with the rents and profits of the same from the time of the conveyance to Eckford; or that the complainant might have such further or other relief as he was entitled to upon the case made by his bill.

The personal representatives of Eckford, and the defendant DeKay in his individual capacity, severally demurred to the bill for want of equity, for multifariousness, and because the Life and Fire Insurance Company was not made a party.

*S. A. Foot & W. Hall,* for the complainant.

*F. B. Cutting & D. Lord. jr.,* for DeKay and the personal representatives of Eckford.

THE CHANCELLOR. The objection that the corporation of the Life and Fire Insurance Company should have been made a party to this bill, appears to be well taken. The receivers of the property and effects of the company, appointed upon the granting of the injunction immediately after the failure of the company as described in the bill in this case, are not the legal representatives of the rights of the corporation upon a bill to redeem the lands mortgaged for the use of the company. The receivers are proper parties, but the corporation itself should also have been a party. It is a fact, although it is not so stated in this bill and therefore it cannot avail the complainant on this demurrer, that the same persons who were appointed receivers, at the suit of a creditor, shortly after the failure of the company, have since been appointed receivers, on the petition of the Attorney General, under the provisions of the revised statutes relative to proceedings against insolvent corporations ; according to which provisions, the title to the property of the corporation is actually vested in the receivers, so that they may prosecute for it in their own names. I am also under the impression that a decree has been made upon that petition, dissolving the corporation. It would, therefore, be a matter of course, if this were the only objection, to permit the complainant to amend his bill in this respect upon the payment of the costs of the demurrers, by making the corporation a party or stating the proper facts to show that the company was no longer in existence, and that the defendants Hoffman and Lawrence fully represent the rights of

all persons who are interested in the concerns of the late corporation.

There is, however, another and more fatal objection in this case, which cannot be remedied by amendment, as this is a sworn bill. The objection on account of multifariousness appears to be well taken. It is evident, from the whole tenor of this bill, that the complainant assumed the debt to the company, and expected that Eckford would settle with, him and pay whatever had been expended for his benefit by the complainant as his agent. The claim, therefore, which is set up in the bill for an account and payment by the representatives of Eckford of whatever may be found due upon the private dealings between Eckford and him, has nothing to do with the redemption of the land which is mortgaged for his debt to the company. This claim, therefore, in which neither the receivers, nor the defendant De-Kay as the holder of the legal estate in the premises mortgaged, had any interest, ought not to have been joined in the same suit with the claim for the redemption of the mortgaged premises and an account against DeKay for the rents and profits of those premises. If the mortgage had been given by the complainant to the company to secure a debt admitted to be due from Eckford to the company, and which he had promised to pay and discharge so as to relieve the complainant's land from the lien of such debt, there would have been some reason for joining the representatives in the same suit, so that they might be bound by the account to be taken of what was due on the mortgage, and might be decreed to pay the balance found due, and thus to relieve the complainant's land. But from the complainant's own showing, he has always since the liquidation of his debt with the company, in 1826, considered himself as the person who was liable for the payment of the debt to the company, and that he had a personal claim against Eckford, for the monies advanced for him, in the purchase and carrying on of the National Advocate; he has accordingly called upon Eckford, from time to time, to pay that balance to himself. His proper remedy, therefore, for the recovery of what is due to him on that account, is by a separate bill against the

personal representatives of Eckford, or by a suit at law against them for monies paid laid out and expended for the use of their testator. The misjoinder, of this claim against the representatives of Eckford alone, with the claim to redeem the land, in which the other parties are interested, renders the bill multifarious, even if the executors were proper parties to the bill for the redemption of the land which had been once in the hands of their testator as the agent or officer of the company. If a joint claim, against two or more defendants is improperly joined in the same bill with a separate claim against one of those defendants only, in which the other defendants have no interest and which is wholly unconnected with the claim against them, all or either of the defendants may demur to the whole bill for multifariousness. (*Ward* v. *The Duke of Northumberland and the Earl of Beverly*, 2 Anst. Rep. 469. *Gibbs* v. *Claggett*, 2 *Gill and Johnson*, 29, *Boyd & Suydam* v. *Hoyt & Parsel*, 5 *Paige's Rep.* 65.)

Neither can I see any good reason, in this case, for making the personal representatives of Eckford parties to the bill for the redemption of this mortgage, as to which they do not appear to have any interest. It is not alleged in the bill that Eckford has violated any trust, for which he is liable to the complainant, by conveying the mortgaged premises to DeKay; or that he conveyed the land to a bona fide holder without notice, who would, in that case, have the right to hold it as an absolute estate. On the contrary, it is alleged in the bill that the land was conveyed to Eckford as the president of the company; and that it was the practice of the corporation to take securities, by way of mortgage, by absolute conveyances to some of its officers. The complainant also alleges that Eckford immediately conveyed the land to DeKay, who was also a director of the company, and knew that the deed was taken merely as a security for the debt thus due to the company. If this allegation in the bill is correct, neither Eckford nor DeKay were accountable for the rents and profits of the land to the complainant; but they were the agents of the company, and DeKay must account to the receivers for the rents and profits received

for their use, to be applied in payment of the principal or interest of the complainant's debt secured by the mortgage. And as no rents or profits were or could have been received by Eckford who conveyed immediately, according to the allegations in the bill, his personal representatives could not be proper or necessary parties to the bill to redeem.

It is not a matter of course to permit a bill to be amended after the allowance of a demurrer for multifariousness; as the multifarious matter is generally such that it cannot be separated from the residue of the bill. And in this case, as the bill is sworn to, it is contrary to the practice of the court to permit it to be altered by striking out; as such an amendment to a sworn bill is not allowable except under very special circumstances. The demurrers must therefore be allowed; and the bill must be dismissed with costs, as to the parties who have demurred, but without prejudice to the future rights of the complainant in a new suit or suits against the proper parties.