*The final accounting in the Estate of* JOHN SHAW.

THE Court of last resort having decided that a Surrogate cannot determine a disputed claim against an estate, the decision of Chancellor Walworth, in 2d Barbour, is overruled.

Review of the decisions of Surrogates and of Supreme Court General Terms, on this question.

Surrogates are prohibited from assuming jurisdiction to try disputed claims, even by consent.

THE SURROGATE. The question raised by the counsel for the administrator is whether, upon a final accounting, where a claim made against the estate is disputed, the Surrogate has jurisdiction to try and decide the claim, and to decree its payment.

The language of the Revised Statutes is: " Whenever an account shall be rendered and finally settled under any of the preceding sections in this article, except the 68th and 69th, if it shall appear to the Surrogate that any part of the estate remains to be paid or distributed, he shall make a decree for the payment and distribution of what shall so remain, to and among the creditors, legatees, widow and next of kin to the deceased, according to their respective rights; and in such decree shall settle and determine all questions concerning any debt, claim, legacy or distributive share, to whom the same shall be payable, and the sum to be paid to each person." (*3d vol. R. S., 5th ed., p.* 182, § 78 [71]).

And the act of 1837 (*chap.* 460, § 71) says: " So much of the 1st section of title 1, chap. 2, part 3 of the Revised

Statutes, as is contained in the following words, * * * 'no Surrogate shall, under pretense of incidental power or constructive authority, exercise any jurisdiction whatever, not expressly given by some statute of this State' * * * are hereby repealed."

This question of the jurisdiction of Surrogates' Courts is no new one; it has been discussed ever since the adoption of the State Constitution of 1846. There has been scarcely a Judicial District in which the Supreme Court Justices have not delivered long and ingenious decisions, adjudging that Surrogates' Courts did not possess this power; and at last a decision to the same effect has been made by the Court of Appeals (*Tucker* v. *Tucker*, 4 *Keyes' N. Y. Reports, p.* 136), which puts an end to any doubt that may have remained. That decision finally shut the door against the settlement of estates of deceased persons by the cheap and expeditious medium of Surrogates' Courts, in any case where the slightest dispute may happen to arise. It was the end of the controversy, and, since its appearance I have, of course, abided by it as being the law officially promulgated.

The revisers of our statutes and the framers of the law of 1837, intended that the Surrogate's Court should be a tribunal having full authority to determine all questions arising under the administration of estates. Appeals from the Surrogate were made to lie to the Chancellor, and all matters of a testamentary nature were, as much as possible, kept from the grasp of the law courts. The long struggle which had been waged in England, was doubtless in the memories of the learned lawyers to whom we are indebted for this legislation. They expressed their intentions in clear and precise language. The cotemporaneous expositions of their text were not doubtful. The present hostile construction only began to appear about the time when the legal reformers of twenty-five years since commenced to strike at once at the Court of Chancery and at the Surrogates' Courts.

The Constitutional Convention of 1846, which abolished the Court of Chancery, actually adjourned under the belief that it had utterly abolished the office of Surrogate also. As a substitute for the great equity tribunal, it had established the eight often conflicting and irreconcilable Supreme Courts, dispensers of octagonal law and confounders of law and equity. In place of the Surrogates' Courts it had erected the County Courts; those unfortunate tribunals which have found nothing to do and have done it so energetically. To the astonishment, however, of these Constitution-makers, the Surrogates, abolished formally in 1846, reappeared in the legislation of 1847. It was found, indeed, that it was impossible to do without them. The Supreme Court, nevertheless, with the traditional enmity of Common Law Courts towards ecclesiastical tribunals, set itself to circumscribe their powers. Itself the creature of the new Constitution, it succeeded to the labors of its creator. And, first, persistently in its own forum, and finally in that to which it furnishes a moiety contingent of Judges, the Court of Appeals, it has given to the language which I have quoted from the Revised Statutes and the law of 1837, a construction which announces that the law makers intended precisely the opposite of what they have said.

Until this final decision in Keyes, the Surrogates in most counties in the State have continued to try disputed claims; generally concluding the entire litigation in as many days as the courts of law would have consumed of years. But by this decision they are prohibited from assuming jurisdiction, even by consent. Consent cannot confer jurisdiction; and the more tedious and costly litigations in courts of law are forced upon the creditor and the representative of the estate. The Surrogate's Court —if, indeed, that is a Court which cannot decide law and fact—is left to the mere clerical duty of adding up vouchers and calculating commissions. The first dispute which arises, is held to terminate all proceedings here,

until another tribunal has possessed itself of the controversy, and passed upon it. The high claims advanced by the learned and eloquent Bradford, who built up a complete system of jurisprudence in the office which he loved so dearly and adorned so well, must be relinquished; and the learning and erudition with which he and others of my predecessors have illuminated this bench, were superfluous and unnecessary. The jealousy of the law courts has crossed the Atlantic, and has assumed to relegate the authority of this testamentary office back to mere clerical functions and duties. What the Constitution could not do in 1846, the Court of Appeals has succeeded in doing in 1869.

It will be interesting to recur to the progress of the legal decisions on this subject of Surrogates' jurisdiction. Up to 1844, there had been no denial that section 71 conferred full jurisdiction upon a Surrogate, upon a final accounting, to try all disputed claims. Mr. Surrogate Ogden, in the matter of the accounting in James Kent's estate, appears to have thrown out the first doubt. He is reported (*Appendix to Dayton's Surrogate*) to have held that he could not determine the validity of a debt, but could decide the amount due and to whom due. This is not very clear, but it makes the beginning of the chapter.

In the same year, 1844, the case of *Fitzpatrick* v. *Brady*, was decided in the Supreme Court. (6 *Hill R.*, *p.* 581.)

That Court held, as law courts had held in similar cases in England, that the Surrogate might decree payment of a debt, if assets existed, upon a compulsory accounting; but that, when the Surrogate decreed that no debt was due from the estate, the decree would be no defense to an action at law against the executor. Such denial by the Surrogate, the Supreme Court said, will not be conclusive upon the creditor; its only effect being to deprive him of the possibility of anticipating payment before the expiration of the eighteen months, or before he has established his debt in due course of law. (This was a case in

which a creditor had asked for a citation against the executor before the eighteen months had elapsed.)

In 1846, Surrogate McVean, of this county, rendered a decision in the matter of the accounting in the Jones estate, which was published in 1864, in 1 *Redfield Surrogate Reports*, p. 263–4. He held that disputed claims could not be adjudicated by him.

The first case reported directly bearing upon this question was that of *Kidd* v. *Chapman* in 1847, in 2 *Barbour's Chancery*, p. 414. This was one of the latest decisions of the venerable and respected jurist, Chancellor Walworth, before leaving the Court with which he was so long identified. It bears the well recognized impress of his ability and precision. It held clearly that the Surrogate had jurisdiction, on a final accounting, to examine and decide as to the validity of all claims against the estate ; and that a Surrogate had jurisdiction, on a compulsory accounting, to decree the payment of a judgment recovered against the decedent in his lifetime

The Chancellor remarked :

"It is not only in the power of the Legislature to establish a summary remedy for the settlement of the estates of deceased persons, but it has unquestionably authorized the Surrogate to examine and decide as to the validity of all claims against the personal estate of the decedent, upon an application for the final settlement of the accounts of an executor or an administrator." * * *

" The Surrogate has the power to decree the payment of a judgment recovered against the testator, in his lifetime, although the executor does not ask a final settlement of his accounts."

In 1849, soon after the new Supreme Court had gone into operation, came the decision in *Magee* v. *Vedder*, 6 *Barbour*, *S. C. R.*, 352. The Court held that the Surrogate had no power to decide on the validity and amount of a disputed claim against an estate on a compulsory accounting.

THE FINAL ACCOUNTING IN THE ESTATE OF JOHN SHAW.

Mr. Justice Harris, in his opinion, said:

" The administrator advertised for claims in due time, but the claimant did not then present his claim.  *  *  * If the executor or administrator, when the claim is thus presented, or at least within a reasonable time thereafter, does not offer to refer the claim, on the ground that he doubts its justice, or dispute it as unjust, it is to be deemed a liquidated and undisputed claim against the estate."  *  *  *

" It is true, the Surrogate is authorized in his discretion, to decree the payment of any debt against the estate. But this does not authorize him to try the validity of the debt.  *  *  *  So long as the demand is in a condition to be contested by the executor or administrator, the Surrogate has no power to proceed. When, therefore, the 71st section declares that the decree of the Surrogate shall settle all questions concerning any debt, it does not mean that he is to determine the validity of the debts, but their priority, the amounts due upon them, and to whom they belong, whether to the original creditor, or to his assignee, &c."

In 1850, in the matter of the estate of Thomas H. Smith (1 *Bradford R., p.* 224), this question was reviewed on the other side by Surrogate Bradford, who reclaimed jurisdiction for his Court, and held that he had jurisdiction to audit and order payment of all claims, whether on a compulsory or on a final accounting. He says:

"As to my jurisdiction, it cannot be questioned that I have authority, upon the sworn petition of a creditor, to cite the executor to account, more than eighteen months having elapsed since his appointment. There are two classes of cases in which the Surrogate may proceed to settle the account after it has been rendered; the first, where a creditor, legatee or distributee asks for payment of his demand, and the executor or administrator denies the sufficiency of assets, thereby rendering it necessary, before ordering payment, to adjust his account, and ascer-

tain the amount of the fund; and the second, where the executor, on being cited to account, or without being cited, applies to the Surrogate for a final settlement. The first settlement is conclusive between the parties, only, and is, therefore, not final in a full sense. The second is between all the parties interested in the estate, and is properly final. It remained for the Legislature to point out the powers of the Surrogate, and the mode of their exercise, in respect to the payment of debts, legacies and distributive shares, in each of the two cases in regard to which they have given the Surrogate authority to settle the accounts of estates.

" Upon a final accounting, it is declared in section 75 that the Surrogate 'shall make a decree for the payment and distribution' of the estate 'to, and among the creditors, legatees, widow, and next of kin to the deceased, according to their respective rights, and in such decree shall settle and determine all questions concerning any debt, claim, legacy, bequest, or distributive share, to whom the same shall be payable, and the same to be paid to each person,' and the only exception to this imperative direction is in the 78th section, which provides that if any claim exists which is not then due, or upon which a suit is then pending, the Surrogate shall allow a sufficient sum to be retained to meet such claim, or its proportionate share of the estate. Thus far the statute pursued the practice of the Ecclesiastical Courts (1 *Phillimore*, 241; 2 *Add.*, 236; 1 *Lee's Cases*, 569; 2 *Ibid.*, 251; 4 *Burns' Ecc. L.*, 487; *Toller*, 494; 2 *Jac. & Wal.*, 201; 2 *Lee's Cases*, 1; 2 *Add.*, 330), in its prominent features, pointing out the course of procedure in particular detail, and giving to the Surrogate no larger jurisdiction than was possessed by the Spiritual Courts, except in respect to the claims of creditors. It never was any part of ecclesiastical jurisdiction to award the payment of a debt, and therefore a creditor could never contest an account, rendered on oath, or demand its settlement, though a legatee

could.    Our statute, in the section to which I have
adverted, steps beyond this limit, and authorizes the set-
tlement of an account at the instance of a. creditor; and
upon a final settlement, makes it imperative upon the Sur-
rogate to adjudicate upon all claims, and decree payment
accordingly.    This was a large increase of power, drawing
as it does within the jurisdiction of this Court, on the
application of the executor or administrator, the hearing
and settlement of every possible claim on the personal
estate, in law or equity, upon which a suit is not pending
at the time.    This power may be invoked by the execu-
tor or administrator at his will, and was designed, as
appears from the notes of the revisers, to afford a substi-
tute for a Court of Equity, wherein alone, at that period,
a final settlement of accounts could be procured.    As yet,
however, no authority was conferred upon the Surrogate
to decree the payment of a debt, on the application of the
creditor.    The law, as then existing (1 *R. L.*, 311, 448),
provided for an account only, in such case.    But, having
directed the Surrogate to decide upon all debts, and
decree payment, on a final accounting, whenever
demanded lawfully by the executor · or administrator,
it was quite consistent in principle, to give him the
like jurisdiction on the demand of the creditor, and
the revisers consequently reported provisions to meet
that end.    They state that, in the effort to reduce
the law relating to the estates of deceased persons into
some order (3 *R. S.*, 2d *ed.*, *p.* 625), their chief object
had been to effect a settlement of the estate of deceased
persons, and to cause a distribution to be made as speedily
as possible (*ibid*, *p.* 626), and that one of the provisions
inserted for that purpose, was 'to compel an account by
the administrator, &c., at the instance of creditors and
relatives,' and another, 'to make it the interest of credi-
tors to present their demands and have them ascertained
without suit.'    One of the most important features in
the development of this plan relates to the jurisdiction

of the Surrogate in regard to the payment of debts. As I have just observed, it was put in the power of the executor or administrator to bring the creditor before the Surrogate in the settlement of the accounts of the estate, and so, likewise, provision was made for enabling the creditor to bring the executor or administrator before the same Court, in the following words (2 *R. S.*, 3*d ed.*, *p.* 178, § 19): 'The Surrogate having jurisdiction shall have power to decree the payment of debts, legacies, and distributive shares against the executor or administrator of a deceased person in the following cases: 1. Upon the application of a creditor, the payment of any debt or a proportional part thereof may be so decreed at any time after six months shall have elapsed from the granting of the letters testamentary, or of administration. 2. Upon the application of a legatee or relative entitled to a distributive share, payment of such legacy or distributive share, or its just proportional part, may be so decreed at any time after one year shall have elapsed from the granting of such letters.' The next section authorizes the Surrogate to prosecute the official bond of the executor or administrator whenever he shall refuse or omit to perform any decree 'for rendering an account, or upon a final settlement, or for the payment of a debt, legacy or distributive share.' The revisers, in their note to section 19, say: 'The mode in which the Surrogate is to proceed in making and enforcing his decree, &c., will be fully treated of in a title of the office and duties of Surrogates. All that is deemed proper here, is to declare the rights of creditors and legatees to proceed before him;' and in their note to section 20, they say: 'This provision seems necessary to the perfection and harmony of the system.' In the subsequent title of 'Surrogates' Courts' it is declared that they shall have power 'to direct and control the conduct, and settle the accounts of executors and administrators,' and 'to enforce the payment of debts and legacies, and the distribution of the estates of

intestates,' and authority is given to enforce all lawful orders, process, and decrees, by attachment. How jurisdiction over all claims, debts and demands could have been given in more comprehensive phrase than by the various sections of the statute quoted, I cannot well perceive. The arguments against it, as an authority subversive of the right of trial by jury, are only plausible. It is somewhat remarkable in regard to this objection, that the revisers reported a section providing for an award of issues for the trial of disputed questions of fact (*Orig.* § 10, 2 *R. S.*, 2 *ed.*, 156; 3 *R. S.*, 680), which was not enacted. Such issues were authorized in respect to questions of fact, arising upon application to sell real estate (2 *R. S.*, 3*d ed.*, *p.* 165, § 14); but even in that case it was left entirely to the discretion of the Surrogate, whether to award them or not. The late Chancellor adverts to this question of a jury trial, in *Kidd* v. *Chapman*, 2 *Bar. Ch. R.*, 423, and justly observes that the matter is one 'resting altogether in the discretion of the Legislature,' and it is manifest that, in conferring power upon the Surrogate to order the payment of debts, the Legislature did not consider it necessary to provide for a jury trial. The case is not precisely analogous to the ordinary one of debtor and creditor. The moment a debtor dies the law asserts the rights of the creditors, and takes the property into its hands. The executors or administrators derive their authority from the law, and as officers of the law, in laying down the mode in which their duty is to be performed, it is perfectly competent for the Legislature to establish a summary mode of proceeding in the settlement of the estate and the payment of the debts; besides, it ought not to be forgotten, that, previous to the adoption of these statutory provisions, as now, it was in the power of the creditor or claimant to procure the satisfaction of his demand out of the personal or real estate in equity. (1 *Mad.*, *ch.* 572, 582; *Story's Eq.*, §§ 535, 537, 546.) In giving jurisdiction to the same extent to the Surrogate,

no substantial change was made, the right of an appeal to the Court of Chancery being retained, and the mode of commencing the proceedings (See 3 *R. S.*, 2d ed., *p.* 644), only being altered.  In view of the many important and radical modifications of the existing law affecting estates of deceased persons enacted in the Revised Statutes, the provisions in relation to costs against executors ; to the adjudication of every kind of claim (*Payne* v. *Matthews*, 6 *Paige*, 22 ; *Gardner* v. *Gardner*, 7 *Paige*, 115), legal or equitable, by the Surrogate on a final accounting ; to compelling the sale of the real estate in satisfaction of the debts and the right therein to pass upon all claims ; I cannot but think it within the spirit and intention, as well as the letter of the statute, to give the Surrogate jurisdiction to decree the payment of a debt or claim, although disputed by the executor or administrator.  Were the question a new one, I should, therefore, after the examination I have given it, be compelled to sustain the jurisdiction.  The Supreme Court, however, seem to have recognized it as well grounded (*Fitzpatrick* v. *Brady*, 6 *Hill*, 581), and the Chancellor has expressly passed upon the point in the case already cited.  These decisions, expressly or by implication, sustain the idea that it rests in the discretion of the Surrogate whether or not, in any particular case, he will exercise the jurisdiction.  My practice in this respect has been to hear the case in the first instance, and unless some question of fact was raised, making it proper to suspend the proceedings until the claim was established at law, to pass upon the validity of the claim, and order or refuse payment accordingly."

In 1851, in the case of *Hall* v. *Bruen*, 1 *Bradford R.*, *p.* 435, the Surrogate held, that when on an application for an order for the payment of a debt, the claim is contested, and appears to be based upon transactions of a remote date and of a very complicated character, to involve an inquiry into charges of fraud, concealment and

falsification of books and accounts, and is of a purely equitable nature, the Surrogate, in the exercise of a discretionary authority conferred upon him by statute, will refuse to try the case, leaving it to the claimant to establish his demand in another Court.

He held further:

" On a final or voluntary accounting, the Surrogate is imperatively required to make a decree settling all questions concerning any debts, &c., unless a suit be pending thereon, or the claim be not due.

" On a compulsory accounting at the instance of a creditor, &c., if claimant ask for payment, the Surrogate may not only proceed to settle the account as between the parties, but also to order payment.

" When the executor or administrator appears and contests the claim, the Surrogate has jurisdiction, and may proceed to hear the case; and it is a matter of discretion, whether to order payment, or to leave the party to his action at law."

It was in the same year, that the Supreme Court took another step in denial of Surrogates' powers. In *Wilson, Exr.* v. *The Baptist Education Society*, 10 *Barbour S. C. Rep.*, *p.* 308, it held that a Surrogate had no power to make a decree for the payment of a disputed debt. The head-notes are as follows:

" Surrogates' Courts are Courts of peculiar and special jurisdiction. Their powers are defined in title 1, chapter 2, part 3, of the Revised Statutes. Claims against the estate of the deceased person, which are disputed or doubted, must be established by the judgment of a Court of Common Law according to the 36th and 37th sections of title 3, chapter 6, part 2, of the Revised Statutes, or in a suit commenced by ordinary process, before they can be regarded as debts against the estate, so as to entitle them to the cognizance of the Surrogate. A Surrogate has no jurisdiction or authority, upon the final accounting of an executor, to make a decree for the payment of the money

mentioned in an instrument executed by the testator, where the same is disputed, and the liability of the executor to pay the amount is denied, and no judgment has been obtained for its recovery."

Mr. Justice John W. Brown said, in this case:

"If a claim be exhibited to the executor or administrator, and disputed or rejected, and it shall not be referred, the claimant shall, within six months after that, commence a suit for the recovery thereof, or be forever barred from maintaining any action thereon. The words ' commence a suit ' have a definite legal significance, and mean the suing out of process, or originating proceedings, whereby an action in a Court of Law or Equity is instituted to establish some right, or redress some wrong. The application made by a creditor to the Surrogate, or the application of an executor for a final settlement, is not a commencement of a suit in this sense."

In 1857, the Supreme Court, in the case of *Disosway, Admr.*, v. *The Bank of Washington*, 24 *Barbour S. C. R.*, *p.* 60, again held that a Surrogate had no power to try a disputed claim against an estate. The opinion of the Court, delivered by Mr. Justice Welles, says:

"Where the statute speaks of the right of a creditor to call for an account and gives power to the Surrogate to decree the payment of a debt, or any part of it, it is to be understood to apply to undisputed debts, only. * * The statute nowhere, in express terms, confers upon the Surrogate the power to adjudicate upon the existence, validity or amount of a debt, claimed against the estate of a testator or intestate, upon a final settlement, where the debt claimed is disputed by the executor or administrator. And a Surrogate should not assume the exercise of such power by inference or implication.

" The Legislature never contemplated that it should be done, but intended the power to remain exclusively in the Courts of Common Law and Equity, where it appropriately belongs. To allow such jurisdiction, would be to

confer upon the Surrogates' Courts the power to hear and determine nearly all disputes and controversies arising upon contracts of every description with deceased parties whose estates are in the hands of executors or administrators.   *   *   *   A Surrogate might determine issues upon the genuineness of the signature to a note which was the evidence of a claim, of fraud and undue influence in the procurement of an obligation upon which the claim was founded, of the capacity of the testator or intestate at the time of the transaction upon which his estate was sought to be charged, of payment, of set-off, of recoupement, and indeed, all the questions which arise in actions."

In 1860, in the case of *Curtis* v. *Stillwell, Executor*, 32 *Barbour S. C. Rep.*, *p.* 354, the Supreme Court reannounced the conclusion that "a Surrogate cannot take cognizance of disputed claims against an estate, and adjudicate upon their validity or invalidity, but must refer them to the Common Law tribunals for adjudication, before he can make a decree for their payment."

Mr. Justice Brown again said :

" This Court has held that a Surrogate has no jurisdiction upon a final accounting, to make a decree for the payment of a claim which is disputed, and the obligation of the personal representative to pay it, denied.   It must first be established by the judgment of a Court of Common Law, and the liability of the estate determined in that forum."

As four Justices of the Supreme Court sit by turns upon the bench of the highest Court, it was easy to foresee that the decision of the Court of Appeals must some day be given in the same direction.   It was the duty, perhaps, of Surrogates, to endeavor to maintain and exercise their asserted jurisdiction, so long as the Court of last resort had not spoken.   The time came when its judgment was given.

Mr. Justice Miller, in delivering the opinion of the Court of Appeals, in *Tucker* v. *Tucker*, 4 *Keyes' R.*, *p.* 136, in September, 1868 (published in 1869), says:

" The question arises whether the Surrogate of a county has jurisdiction to hear, try and determine the amount and validity of a disputed demand upon a final accounting of an executor or administrator. The power of the Surrogate to act and to adjudicate in such a case depends upon the construction to be placed upon § 71 *of 2d Revised Statutes, p.* 96, which relates to the duties of executors and administrators in rendering an account and in making distribution to the next of kin, and which provides that, whenever an account shall be rendered and finally settled (except under certain sections, which are stated), and if any part of the estate remains to be paid or distributed, the Surrogate may make a decree for the payment and distribution thereof among the creditors, &c., according to their respective rights, and in such decree shall settle and determine all questions concerning any debt, claim, legacy, bequest or distributive share; to whom the same shall be payable, and the sum so to be paid to each person. This provision of the statute has been the subject of judicial interpretation; and it has been held in several cases in the Supreme Court in this State, that the Surrogate has no power to adjudicate in reference to a disputed claim. Among these cases are the decisions of four General Terms of this State; and in the opinions delivered, the statutes bearing upon the jurisdiction of the Surrogate in such cases, and the authorities relating to the question are fully considered, so that no field of inquiry remains to be explored. The jurisdiction of the Surrogate is local, limited in its nature, and was never intended to embrace cases of such a character, but to be confined to the discharge of certain prescribed duties, which do not embrace the hearing and disposition of claims which are contested. The provisions of the Revised Statutes (3 *R. S.*, 181, § 72), giving to the final decree of the Surrogate upon the final settlement of an account the same force and effect as the decree or judgment of any other Court of competent jurisdiction,

applies only to a decree or judgment made according to law, and within the jurisdiction of the Surrogate, and not to a decree or judgment where that officer has plainly exceeded his authority."

In obedience to this decision, the present account being disputed (inasmuch as several creditors appear, whose claims I cannot try), it will be placed on file in the Surrogate's office, until the Surrogate shall be advised of the action of the Courts of Law upon the claims.