## CAMPBELL *vs.* BRUEN.

### *In the matter of the Estate of* THOMAS H. SMITH, *deceased.*

WHEN an executor or administrator, in compliance with a citation to account issued at the instance of a creditor, a legatee, or distributee, has *rendered* his account, and submitted to an examination, that terminates the proceeding ; unless the executor or administrator asks for a *final* settlement ; or the party who has applied for the account has also prayed for the payment of his demand. In either of the latter cases the Surrogate may proceed to *settle* the account.

On a *final* or *voluntary* accounting, the Surrogate is imperatively required to make a decree, settling all questions concerning any debt, claim, legacy, bequest, or distributive share, unless a suit be pending thereon, or the claim be not due. On a *compulsory* accounting at the instance of a creditor, legatee, or distributee, if the claimant ask for payment of his demand, the Surrogate may not only proceed to settle the account as between the parties, but also to order payment of the claim.

The Surrogate has power to decree the payment of debts, legacies, and distributive shares ; and where the executor or administrator appears and con-

tests the claim, the Surrogate has jurisdiction, and may proceed to hear the case, and it is a matter of discretion whether to order payment, or leave the party to his action at law.

H. M. WESTERN, *for Petitioner.*
W. M. EVARTS, *for Executor.*

THE SURROGATE. The petitioner, Duncan P. Campbell, claims to be a creditor of the deceased, and prays for an account, and payment of his demand. The executor, Herman Bruen, in his answer, denies any knowledge of the claim, and insisting upon full proof thereof in a Court of competent jurisdiction, excepts to the jurisdiction of the Surrogate. The answer also sets up in bar, the statute of limitations, and presumption of payment.

The deceased died in 1828, and letters testamentary were issued to George W. Bruen, October 9, 1828. He was superseded as executor, October 28, 1846, and letters were granted January 19, 1847, to Herman Bruen, one of the executors named in the will who had not previously qualified.

I shall now proceed to consider the two questions involved in the case, in the order they were presented.

1. As to jurisdiction. The petitioner swears positively that he is a creditor of the deceased, and specifies the basis of his demand with particularity. It cannot be questioned that I have authority upon this sworn petition to cite the executor to account, more than eighteen months having elapsed since his appointment. (2 *R. S.*, 3*d ed.*, *p.* 155, § 55.) After eighteen months an executor may be required to render an account, either on the application of some person having " a demand" against the personal estate of the deceased, as " creditor," legatee, or next of kin, or by the Surrogate on his own motion without such application. The 58th Section then directs the mode of rendering such an account, and authorizes the examination of the executor or administrator touching the payments, the property of the deceased, and its disposition. " This however com-

pletes the rendering of the accounts; and it terminates the proceeding, unless the executor or administrator has asked for a final settlement, or some person interested as a creditor or legatee, or who is entitled to a distributive share of the estate, has applied for the payment of his debt or legacy, or distributive share." (1 *Bar. Ch. R.*, 477, *Westervelt* vs. *Gregg*.) There are two classes of cases in which the Surrogate may proceed to settle the account after it has been rendered; the first, where a creditor, legatee, or distributee, asks for payment of his demand, and the executor or administrator denies the sufficiency of assets, thereby rendering it necessary, before ordering payment, to adjust his account, and ascertain the amount of the fund; and the second, where the executor on being cited to account, or without being cited, applies to the Surrogate for a final settlement. After directing how an account shall be rendered, the statute proceeds to prescribe how it shall be *settled.* Sections 59, 61, and 62, use the precise term, " *settlement* of account," and following consecutively the 55th Section, which requires an account on the application of a creditor, or other party in interest, they manifestly relate to the settlement of the account *so* rendered at the instance of an adverse party, as well as to other cases of accounting. No other kind of accounting is spoken of till the 64th Section, where it is declared, that if, upon being required to account by the Surrogate, the executor or administrator desires to have the account " finally settled," he may have a citation for that purpose. The words " final settlement," imply that there may be a settlement which is not *final*, and sustain the construction of the statute just advanced, that there are two cases in which the account may be settled, one on the motion of an adverse party, and the other on the application of the executor or administrator (§ 64), after being cited to account. The first settlement is conclusive between the parties only, and is therefore not final in a full sense; the second, is between all the parties interested in the estate, and is pro-

perly final. It is obvious from a reference to Sections 72 and 73, in regard to the account of a superseded executor or administrator, that all the previous sections contemplate "the case of a settlement at the instance of a creditor" or other party in interest. The 74th Section then proceeds to authorize an executor or administrator to "render a final account, of all his proceedings," "although not cited to do so," and on a citation to all persons interested, declares that "thereupon the same proceeding shall be had for a final settlement, and with the like effect in all respects, as in the case of a settlement at the instance of a creditor." Thus far the statute seems to me clear, consistent, and harmonious. It remained for the Legislature to point out the powers of the Surrogate, and the mode of their exercise in respect to the payment of debts, legacies, and distributive shares, in each of the two cases, in regard to which they had given the Surrogate authority to settle the accounts of the estate. Upon a final accounting, it is declared in Section 75, that the Surrogate "*shall* make a decree for the payment and distribution" of the estate "to, and among the creditors, legatees, widow, and next of kin to the deceased, according to their respective rights, and in such decree shall settle and determine all questions concerning any debt, claim, legacy, bequest, or distributive share, to whom the same shall be payable, and the sum to be paid to each person," and the only exception to this imperative direction is in the 78th Section, which provides that if any claim exists which is not then due, or upon which a suit is then pending, the Surrogate shall allow a sufficient sum to be retained to meet such claim, or its proportionate share of the estate. Thus far the statute pursued the practice of the Ecclesiastical Courts (1 *Phillimore*, 241 ; 2 *Add.*, 236 ; 1 *Lee's Cases*, 569 ; 2 *Ibid.*, 251 ; 4 *Burns. Ecc. L.*, 487 ; *Toller*, 494 ; 2 *Jac. & Wal.*, 201 ; 2 *Lee's Cases*, 1 ; 2 *Add.*, 330) in its prominent features, pointing out the course of procedure in particular detail, and giving to the Surrogate no larger jurisdiction than was

possessed by the Spiritual Courts, except in respect to the claims of creditors. It never was any part of Ecclesiastical jurisdiction to award the payment of a debt; and therefore a creditor could never contest an account rendered on oath, or demand its settlement, though a legatee could. Our statute in the sections to which I have adverted, steps beyond this limit, and authorizes the settlement of an account at the instance of a creditor, and upon a *final* settlement, makes it imperative upon the Surrogate to adjudicate upon all claims, and decree payment accordingly. This was a large increase of power, drawing as it does within the jurisdiction of this Court, on the application of the executor or administrator, the hearing and settlement of every possible claim on the personal estate, in law or equity, upon which a suit is not pending at the time. This power may be invoked by the executor or administrator at his will, and was designed, as appears from the notes of the Revisers, to afford a substitute for a Court of Equity, wherein alone at that period a final settlement of accounts could be procured.

As yet, however, no authority was conferred upon the Surrogate to decree the payment of a debt, on the application of the creditor. The law as then existing (1 *R. L.*, 311, 448), provided for an account only, in such case. But having directed the Surrogate to decide upon all debts, and decree payment, on a final accounting, whenever demanded lawfully by the executor or administrator, it was quite consistent in principle, to give him the like jurisdiction on the demand of the creditor, and the Revisers consequently reported provisions to meet that end. They state that in the effort to reduce the law relating to the estates of deceased persons into some order. (3 *R. S.*, 2d ed., *p.* 625), their chief object had been to effect a settlement of the estate of deceased persons, and to cause a distribution to be made as speedily as possible (*Ibid., p.* 626), and that one of the provisions inserted for that purpose, was " to compel an account by the administrator, &c.,

at the instance of *creditors* and relatives," and another " to make it the interest of creditors to present their demands, and have them ascertained without suit." One of the most important features in the development of this plan, relates to the jurisdiction of the Surrogate in regard to the payment of debts. As I have just observed, it was put in the power of the executor or administrator to bring the creditor before the Surrogate in the settlement of the accounts of the estate, and so likewise provision was made for enabling the creditor to bring the executor or administrator before the same Court, in the following words (2 *R. S.*, 3*d* ed., *p.* 178, § 19): "The Surrogate having jurisdiction shall have power to decree the payment of debts, legacies, and distributive shares against the executor or administrator of a deceased person in the following cases: 1. Upon the application of a creditor, the payment of any debt or a proportional part thereof, may be so decreed at any time after six months shall have elapsed, from the granting of the letters testamentary, or of administration; 2. Upon the application of a legatee or relative entitled to a distributive share, payment of such legacy or distributive share, or its just proportional part, may be so decreed at any time after one year shall have elapsed from the granting of such letters." The next section authorizes the Surrogate to prosecute the official bond of the executor or administrator whenever he shall refuse or omit to perform any decree " for rendering an account, *or* upon a final settlement, *or* for the payment of a debt, legacy, or distributive share." The Revisers in their note to Section 19, say, " The mode in which the Surrogate is to proceed in making and enforcing his decrees, &c., will be fully treated of in a title of the office and duties of Surrogates. All that is deemed proper here, is to declare the rights of creditors and legatees to proceed before him;" and in their note to Section 20, they say, " this provision seems necessary to the perfection and harmony of the system." In the subsequent title of " Surrogates' Courts," it is declared that

they shall have power "to direct and control the conduct, and settle the accounts of executors and administrators," and "to enforce the payment of debts and legacies, and the distribution of the estates of intestates," and authority is given to enforce all lawful orders, process, and decrees, by attachment. How jurisdiction over all claims, debts, and demands could have been given in more comprehensive phrase than by the various sections of the statute quoted, I cannot well perceive. The arguments against it, as an authority subversive of the right of trial by jury, are only plausible. It is somewhat remarkable in regard to this objection, that the Revisers reported a section providing for an award of issues for the trial of disputed questions of fact (*Orig.* § 10, 2 *R. S.*, 2 *ed.*, 156; 3 *R. S.*, 680), which was not enacted. Such issues were authorized in respect to questions of fact arising upon applications to sell real estate (2 *R. S.*, 3*d ed., p.* 165, § 14), but even in that case it was left entirely to the discretion of the Surrogate, whether to award them or not. The late Chancellor adverts to this question of a jury trial, in *Kidd* vs. *Chapman*, 2 *Bar. Ch. R.*, 423, and justly observes, that the matter is one, " resting altogether in the discretion of the Legislature," and it is manifest, that in conferring power upon the Surrogate to order the payment of debts, the Legislature did not consider it necessary to provide for a jury trial. The case is not precisely analogous to the ordinary one of debtor and creditor. The moment a debtor dies, the law asserts the rights of the creditors, and takes the property into its hands. The executors or administrators derive their authority from the law, and as officers of the law, in laying down the mode in which their duty is to be performed, it is perfectly competent for the Legislature to establish a summary mode of proceeding in the settlement of the estate and the payment of the debts. Besides, it ought not to be forgotten, that previous to the adoption of these statutory provisions, as now, it was in the power of the creditor or claimant, to procure the sa-

tisfaction of his demand out of the personal or real estate, in equity. (1 *Mad. Ch.*, 572, 582 ; *Story's Eq.*, § 535, 537, 546.) In giving jurisdiction to the same extent to the Surrogate, no substantial change was made, the right of an appeal to the Court of Chancery being retained, and the mode of *commencing* the proceedings (See 3 *R. S.*, 2d ed., *p.* 644), only, being altered. In view of the many important and radical modifications of the existing law affecting estates of deceased persons enacted in the Revised Statutes, the provisions, in relation to costs against executors ; to the adjudication of every kind of claim (*Payne* vs. *Matthews*, 6 *Paige*, 22 ; *Gardner* vs. *Gardner*, 7 *Paige*, 115), legal or equitable, by the Surrogate on a final accounting ; to compelling the sale of the real estate in satisfaction of the debts and the right therein to pass upon all claims ; I cannot but think it within the spirit and intention, as well as the letter of the statute, to give the Surrogate jurisdiction to decree the payment of a debt or claim, although disputed by the executor or administrator. Were the question a new one, I should, therefore, after the examination I have given it, be compelled to sustain the jurisdiction. The Supreme Court, however, seem to have recognized it as well grounded (*Fitzpatrick* vs. *Brady*, 6 *Hill*, 581), and the Chancellor has expressly passed upon the point in the case already cited. These decisions, expressly or by implication, sustain the idea, that it rests in the discretion of the Surrogate, whether or not in any particular case, he will exercise the jurisdiction. My practice in this respect has been, to hear the case in the first instance, and unless some question of fact was raised, making it proper to suspend the proceedings until the claim was established at law, to pass upon the validity of the claim, and order or refuse payment accordingly. There is no such issue involved in the present case, and I shall, therefore, proceed to consider the nature and validity of the claim demanded.

2. The demand arises on a covenant or agreement under seal, to indemnify the petitioner against a claim of Clark

& Langworthy, upon which claim, after a suit and verdict in the Superior Court, the petitioner paid the moneys now demanded from the executor of Thomas. H. Smith, the covenantor. There is no dispute about the consideration of the covenant, the entire fairness of the transaction, the payment of the money, or the propriety of the payment. The agreement of indemnity is under seal, and is dated June 12th, 1827. The payments made under it, were in August and October, 1830, and in February, May, August, and November, 1831. The petition in this case was filed in January, 1850, and throwing out the term of eighteen months after the death of the testator, which is not deemed any part of the time limited by law for the commencement of actions against an executor (2 *R. S.*, 3*d ed.*, *p.* 544, § 8), from seventeen to eighteen years will be found to have elapsed since the amounts were paid. The presumption of payment of money applicable to a demand upon a sealed instrument arises, both at Common Law and by the statute, after the expiration of twenty years, from the time a right of action shall accrue, and not from the time of the execution of the instrument. From the mere lapse of time, therefore, I cannot presume payment. Doubtless, other circumstances in connection with the staleness of a demand may be taken in view in determining a question of payment, or payment may be presumed of a fresh or new claim, from particular circumstances : and I have recently, in the case of an old bond, refused under the same sections of the statute now invoked by the claimant, to decree its payment, leaving the party to his action at law, on the ground that there were facts affecting the transaction which required explanation, and which might in connection with lapse of time lead to a presumption of payment. The present demand is answered by *time* alone, and the answer is insufficient. The proceeding is instituted here, directly upon the covenant of indemnity, and the liability sought to be enforced, instead of growing out of the instrument collaterally, is based primarily upon the agreement itself.

The moneys which Campbell has paid, are the very moneys the testator covenanted under seal to repay him. It is true, they remained to be ascertained and liquidated, and the liability of the deceased was contingent; but when the event happened, when the claim indemnified against was fixed and paid, the testator or his representatives became bound upon an express original covenant to pay the amount. I can find no case that attaches any limitation of time to the prosecution of such a cause of action, except that growing out of the rule of presumption of payment in twenty years. The defence is then nakedly, *time*, and no circumstances are adduced in aid of the presumption of payment desired to be established. But on the contrary, though the claim has laid dormant for many years, some light is thrown on the motives of the creditor's delay, by the fact that the testator died, and as was supposed, insolvent (*Cowper's R.*, 102), before the cause of action accrued. When events have transpired effectuating a change in the condition and value of the testator's estate, it is just as natural that the debt should be demanded, as that it should have remained quiescent so long, when there was slight prospect of its payment. Without any facts then adduced in favor of the idea, that this debt has been paid, or tending to make the delay of the creditor appear in a suspicious light, so as to call for explanation, I cannot, from the mere expiration of seventeen or eighteen years, presume the claim to have been paid : and I have no hesitation in pronouncing in favor of the demand and directing its payment.

The petitioner claims interest, but I do not think him entitled to it, except from the time of filing his petition. It is not necessary that the amount demanded be liquidated, in order to carry interest (*Van Rensselaer* vs. *Jewett*, 2 *Comstock*, 135), but it is requisite there should be a default, interest being given by way of compensation, from the time the default occurred. The covenant in this case is not to pay at a certain time, so that a default occurs *eo in-*

*stanti,* if the money be not paid. It is a covenant of indemnity, upon which the covenantor does not become liable, except upon a certain contingency. Notice and a special demand should have been proved to have entitled the claimant to interest. (12 *J. R.,* 156; 3 *Cowen,* 437; 5 *Cowen,* 587; 11 *Wend.,* 486; 2 *Gallison,* 45; 22 *Maine R.,* 120; 12 *New Hamp. R.,* 481; 22 *Pick.,* 291; 1 *Swanst.,* 91; 1 *Am. Lead. Cas.,* 354, *notes.*) No special demand was shown. The decree will, therefore, be, for the payment of $2,948 51, with interest from the time of presenting the application, without costs.