NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—AUGUST, 1876.

## TUCKER v. McDERMOTT.

*In the matter of the Estate of* JAMES UGLOW, *deceased.*

The Surrogate may, of his own motion, compel testamentary trustees to render an account.

He has power to settle an account so rendered; and for that purpose, the Surrogate of the city and county of New York may refer it to an auditor or referee.[*]

It is the uniform practice to pass upon and determine the state of an account rendered by an executor or administrator on the petition of a creditor or legatee, although there be no petition for a final accounting. But without a petition for a final accounting, a decree for distribution will not be made.

The desire to interpose a defence, such as the statute of limitations, is no excuse for refusing to refer a claim against the estate of a decedent; because any defence which could be interposed in an action may be interposed on a reference.

The fact that the court, in determining an action against executors, administrators or trustees does not charge them personally with the costs, is not conclusive in their favor, as to the allowance of such costs as paid by them, when their accounts are rendered in the Surrogate's court.

Where trustees, &c., are ordered to account at their own costs, the auditor to whom the account is referred has no power to charge the costs on

---

[*]Compare *Matter of Ritch*, post.

the estate; nor should the Surrogate do so, on a motion to confirm his report.

Where infants are concerned, the court will interfere to correct an error prejudical to them, though acquiesced in by their special guardian and counsel.

Full commissions are not allowable to trustees on an accounting merely because, without the order of court or requirement of statute, rests have been made for the purpose of charging the trustee with interest.

Compound interest should only be charged in case of gross delinquency or intentional violation of duty.

THIS was a proceeding to correct an auditor's report made on a reference of an account filed by testamentary trustees in the estate of James Uglow, deceased.

On the 16th day of February, 1874, the late Surrogate issued an order requiring the executors, John R. Flanigan and William McDermott, testamentary trustees under the will of the testator, to render an account of their proceedings as such, and that such accounting be at the personal costs and charge of such trustees, unless they should apply to the Surrogate for a final settlement, within ten days from service of the order.

On the 23d of March, 1874, the trustees filed their account, but failed within the ten days, to apply for a final account.

On April 6th, 1874, objections were filed by Gideon J. Tucker, Esq., guardian of William R. Uglow, and Kate P. Uglow, infants, and *cestuis que trust*, praying a reference of the account. On the same day, the matter was referred to Charles Price, as auditor, who, on the 25th of November, following, filed his report, to which exceptions were filed, on the 21st of December, 1874.

On the 11th day of January, 1876, the guardian filed a petition on behalf of his wards, setting forth the said order that the trustees' account, which was on motion of the Surrogate, the filing of the account, objections thereto, and order of reference, and the report of the referee, finding that there was a balance in the

hands of McDermott, trustee, applicable to the expenses of this accounting, &c., and for the support and maintenance and education of the infant children, $1,155.92, and the filing of exceptions to said report. The petition further set forth that on the 10th day of February, 1875, the question of confirming the report was argued before the late Surrogate, but no order or decree had ever been entered.

The petition also alleged that the said trustees were lawyers, and that one of them, Flanigan, was responsible, and the other, McDermott, irresponsible—that McDermott had the entire charge of the trust funds, and had mixed them with his own funds, and kept no separate account—that no inventory was filed, until ordered by the Surrogate—that no final accounting had been had, and the estate had lost thousands of dollars by said McDermott's mismanagement, defending suits without sufficient reason, &c. The relief demanded by the petition was, that the auditor's report finding that the amount aforesaid in Mr. McDermott's hands was applicable to the expenses of said accounting, be disallowed, and that such expenses of said accounting be disallowed, and that such expenses be declared to be at the cost and charge of the trustee individually.

GIDEON J. TUCKER, *for the petitioner.*

GEORGE W. BLUNT, *for the executor.*

THE SURROGATE.—It is objected by counsel for the infants, and their guardian, that the Surrogate had no authority to grant an order of reference to the auditor, because there was no application for a final accounting and settlement—the order only requiring an accounting.

The cases of *Campbell* v. *Bruen* (1 *Bradf.*, 227), *Westervelt* v. *Gregg,* (1 *Barb. Ch.,* 469), and *Smith* v. *Van Kuren* (2 *Id.,* 473), are cited as authority for this objection.

Section 52, (of 2 *Statutes at Large,* 94.,) provides that executors and administrators, after the expiration of eighteen months from the time of their appointment, may be required to render an account of their proceedings upon the application of each person having a demand against the personal estate of the deceased, either as creditor, legatee, or next of him.   Section 54 provides for the production of vouchers for debts and legacies paid, and expenses, and for examination of the executors or administrators making such payments, &c.; and section 55 provides that on settlement of an account, the executors and administrators may be allowed items of expenditure not exceeding $20, for which no voucher is produced, if the item be supported by oath, &c.   Section 58 provides that on settlement of such account, the executor or administrator may be allowed commissions in a prescribed amount.   Section 60 provides for the final settlement of an executor's or administrator's account, on his application, in case he has been required under a prior section, to render the account; showing that there are, as held in the case of *Campbell* v. *Bruen, supra,* two classes of cases in which the Surrogate may proceed to settle the account after it has been rendered.

Chapter 782, of the laws of 1867, in its first section, provides that the Surrogate shall have power and jurisdiction to compel testamentary trustees and guardians to render accounts of their proceedings in the same manner as executors, administrators and guardians appointed by such Surrogate are now required to account.

It is clear therefore, that the Surrogate had the power under this section to require the trustees in this matter to account, and section 52, above cited, provides that executors and administrators may be compelled to account, on the motion of the Surrogate himself, and if no further proceedings could

be taken, to determine the correctness of the account so rendered, the authority to compel such an account would be valueless, and the proceeding an idle ceremony, affording no information or security to the parties interested in the accounting. While, in the absence of a petition or citation for that purpose, the Surrogate has no power to order, under a final decree, the distribution of the estate as upon a final accounting, yet it is apparent that in order to make the accounting on the Surrogate's motion effectual for any practical purpose, he must have authority to pass upon the correctness of the account, and for that purpose the *Revised Statutes* provided that the executor or administrator may be examined in respect thereto; and it is the uniform practice to pass upon and determine the state of the account rendered, when rendered on the application of a creditor, or legatee, and though there was no petition for a final accounting, I see no good reason why such accounting may not be as conclusive upon all the parties represented therein, as though it were final.

By chapter 359, of the laws of 1870, section 6, it is provided that in any accounting in the Surrogate's Court, or any other proceeding therein, the Surrogate may appoint a referee to take testimony as to the facts in relation thereto, to examine the accounts rendered to said Surrogate, to hear and determine all disputed claims, and other matter relating to said account, and to make a report thereon, subject to the confirmation of the Surrogate.

Under this section I entertain no doubt of the authority of the Surrogate to make the order of reference to the auditor in this matter.

By section 71, (2 *Statutes at Large*, 98,) it is provided that whenever an account shall be rendered, and finally settled, the Surrogate shall make a decree for

payment and distribution of what shall remain among certain legatees, widow, and next of kin, according to their respective rights, and settle and determine all questions concerning any debt, claim, legacy, bequest, or distributive, share, &c., showing that the decree of distribution is to follow the final settlement of an account.

There seems no reason to doubt that as this accounting is not final, no such decree can be entered in this case ; yet in order to afford any practical advantage to any of the parties before the court in this proceeding, there should be a decree entered finding substantially the state of the account to the time when the same was rendered under the order initiating this proceeding.

I must, therefore, for that purpose, examine and pass upon the report.

The exceptions filed to the auditor's report, which seems to me to demand particular attention are :

*First.*—Those relating to the expenses attendant upon the prosecution of the claim of Mrs. Uglow, against the estate, which was presented and disputed, and respecting which an offer was made on the part of the claimant to refer under the statute, and a refusal given on the part of the trustees.

*Second.*—To that part of the report which finds that the balance in the hands of the trustees is applicable to the expenses of this accounting.

There is in this case a further question by the report as to the propriety of the charge for full commissions on annual rests, which, however, seems not to have been excepted to by the special guardian respecting the infants. The annual rests seem to have been made, because of the counsel for the infants demanding that the trustees should be charged in their account with interest, and that annual rests for that purpose should be made.

As to the first question raised, the referee seems to assume that the expenses which attended that litigation amounted to about $1,800 : the special guardian excepts upon the same theory, but an examination of the testimony shows that the costs entered in the judgment were $417.26, and there seems to have been nothing before the auditor, showing the amount of referee's fees in that action, which would, in case of a reference under the statute, probably have amounted to about the same, and from the evidence, it is impossible to determine how much should be charged to the trustees, by way of expenses unnecessarily incurred by reason of their refusal to refer.

Section 41, of (2 *Statute at Large,* 92), provides that no costs shall be recovered against executors or administrators to be levied on their property, or the property of the deceased, unless it appear that the demand on which the action was founded, was presented within the time required,—that its payment was unreasonably resisted, or neglected, or that the defendant refused to refer the same, according to the statute, in which case the court may direct such costs to be levied on the property of the defendant, or of the deceased, as shall be just, having reference to the facts that appear on the trial. On the part of the trustees, it is urged that they should not be personally charged with the costs of the action brought by Mrs. Uglow against the trustee on her claim, because they desired to raise the question of the statute of limitations, &c.

A sufficient answer to this suggestion is that any defence which may be interposed in an ordinary action to recover the amount of the claim may be raised on a reference under the statute, and it is occasion for surprise that the trustees in this matter who are reputable lawyers, should make such an excuse for refusing to refer.

(See *Redfield Surr. Pr.*, 296 : *Tracy* v. *Suydam*, 30 *Barb.*, 110; *Dayton on Surrogates*, 389.)

It is also urged as a reason why the trustees on this accounting should not be charged with the costs of that action, that the court did not direct such costs to be levied on the property of the defendants, and that it was peculiarly within the province of that court to pass upon that question.

For the purpose of that action, it is true that it was for the court to determine the question whether the payment of the claim had been unreasonably resisted, or there had been a refusal to refer; but in that question the parties seeking to charge the trustees were not represented, and it may have been a question of indifference to the plaintiff in that action, whether the costs were charged upon the trustees individually, or upon the estate. Her neglect to apply to the court for such a direction cannot estop the objection in this proceeding; and if the amount were considerable, and reasonably ascertained, I should not hesitate to hold that the trustees might be charged personally with the costs in this action, or rather their account charging the estate therewith, be disallowed.

But the proof before the auditor does not sufficiently define the loss to the estate, by reason of the refusal to refer. The amount paid to counsel representing the trustees in that action may not have been greater than would have been charged for the like services before a referee under the statute.

A considerable proportion of the $1,800 mentioned in the auditor's report, and in the exceptions filed thereto, is made of interest accruing upon the original claim during the pendency of the litigation, and under the circumstances of the case, I am not able to say that the auditor committed any error in his finding upon that

question. As to the second exception, I think it quite clear that it is well taken. The terms of the order provide that the accounting shall be at the expense of the trustees, and I know no authority that an auditor has, to change the terms of the order by his report, and it seems to me equally clear, that while that order stands, the present Surrogate should respect its provisions and that he has no power to set it aside, on a motion to confirm an auditor's report.

It may be urged against this construction of the order, that when the order was made, it only contemplated a formal rendering and filing of the account, and did not embrace an investigation respecting its correctness; but I have already suggested that the statute providing for such an accounting pre-supposed the authority of the Surrogate to investigate, and pass upon the correctness of the account; and in this case both logically and equitably the terms of the order should be followed, because the investigation of the account before the auditor has resulted in material additions to the charges against the trustees, and has shown that the account in several particulars was not correct.

The question as to the charges of compound interest, and allowing full commissions on annual rests, is one of embarrassment because of the peculiar manner in which this question is treated by the special guardian, and the auditor.

The auditor seems to base the allowance of full commissions upon the claim of the special guardian that interest should be charged to the trustees on the funds remaining in their hands, and the special guardian appears to have acquiesced in that finding, as he has interposed no exception to the auditor's report in that particular, the result of which is the charging of the trustees with $200.33, as interest, and the sum of $114.35

is credited to them by way of commissions, and an excess over ordinary commissions, amounting to $597.79. If this state of things was acquiesced in, by the counsel acting as special guardian in these proceedings with full knowledge of its consequences, it would be embarrassing to interfere with the finding of the auditor in that respect, and yet where such injustice towards infants is apparent, it is be the obvious duty of this court to correct the error, and set the infant claimants right; but I think that the auditor fell into an error when he supposed that because annual rests might be made, full commissions should be charged against the estate.

The earlier cases seem to hold that such commissions are only chargeable, in cases where annual rests are made under the *order of courts*, for the purpose of charging executors with interest. (*Vanderhuyden* v. *Vanderhuyden*, 2 *Paige*, 287; *Matter of Bank of Niagara*, 6 *Id.*, 213; *Hosack* v. *Rogers*, 9 *Id.*, 461; *Bennett* v. *Chapin*, 3 *Sandf.*, 673; *Fisher* v. *Fisher*, 1 *Bradf.*, 335.) But the more recent decisions authorize annual rests, and full commissions, in all cases where such accounting is made under the requirements of a rule of court, or by the provisions of a statute. (*Morgan* v. *Hannas*, 13 *Abb. Pr., N. S.*, 361.)

It is clear however, that as yet there have been no annual rests in this account under the order of the Court for the purpose of charging the trustees interest, nor was there an accounting annually, pursuant to the statutes, and I see no reason for charging full commissions according to the auditor's report, nor am I able to perceive any good reason based upon the evidence in this matter for charging the trustees with compound interest. The charge of compound interest, is based upon evidence of gross delinquency, or an intentional viola-

tion of duty. (*Redfield Surr. Pr.*, 400). The evidence before the auditor, in my opinion, does not warrant the finding that the trustees, or either of them, had been guilty of gross delinquency, or intentional violation of duty. In the respects above suggested, the auditor's report should be modified and in other respects confirmed.

Order accordingly.