NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
January, 1880.

## WHITNEY *v.* PHŒNIX.

*In the matter of the estate of* STEPHEN WHITNEY, *deceased.*

Where executors, who are also testamentary trustees, pending their accounting as executors in the Surrogate's court, have begun an action in the Supreme Court for an accounting as trustees, they will not be compelled to include, in their accounting in the Surrogate's court, their proceedings as such trustees.

*It seems,* that executors who are charged with trust duties should, when finally accounting as executors, include all their proceedings in the administration of the estate, in whatever capacity they have assumed to act.

*It seems,* that it is improper for testamentary trustees to begin an action in the Supreme Court for an accounting, pending their accounting as executors in the Surrogate's court.

Where the will authorizes the executors and trustees to appoint commissioners to partition the residuary estate, who shall convey the shares of the beneficiaries in severalty to the trustees, and such partition is had, no title to the property vests in the commissioners, and the executors take directly under the will, and not by virtue of the conveyance from the commissioners.

Executors have no authority to appropriate the funds of the estate on account of their commissions, without a settlement of their accounts, or allowance of such commissions, by the Surrogate. Upon the sums so withdrawn, simple interest at the current rate is chargeable down to the time of the settlement of their accounts.

Where a fund is directed to be invested, and the interest, dividends, and income are to be applied to the use of the beneficiary for life, the profit realized upon the sale of stock, in which a portion of such sum is invested, does not belong to the life-tenant as income, but must be added to the principal, of which he is entitled to the interest and income.

Where the executors are authorized to submit to arbitration or reference any difference which may arise between them and any legatee or devisee, a submission to the counsel of the estate of a claim by a legatee to the profit of a fund, in hostility to the rights of the remaindermen, where one of the executors is the husband and agent of the claimant, is

invalid ; first, because the counsel of the estate cannot act as arbiter, and second, because an executor, who represents all interests in the estate, cannot act in the double capacity of representative of all the beneficiaries and special agent for one.

———

An executor, who, by his negligence, suffers his co-executors to receive and waste the estate, being able to prevent it, is liable to the beneficiaries for the waste.

A the executors who are privy to the misapplication of the funds of the estate, under the name of commissions, without remonstrating against it, are liable for the sums so appropriated, with interest at the then statutory rate.

*It seems*, that where a surviving executor is held liable for the misappropriation of funds to which his deceased co-executor was a privy, he will be entitled, upon the failure of the latter's representatives to pay their share of the liability, to re-imburse himself out of the commissions due the estate of such deceased co-executor.

MOTION to confirm the report of the auditor and referee, upon accounting of executors, except as to one finding thereof, referred to below. Opposed by the representatives of two deceased sons of the testator, certain of the grandchildren, and, as to that one finding, by a daughter of decedent.

. The provisions of the will and codicil, affecting the questions raised by the exceptions, are contained in the following clauses.

*Sixth.* I hereby order and direct that my said executors and trustees, or such of them as may qualify and assume upon themselves the execution of this my will, the survivors and survivor of them, immediately after my decease, to set aside out of my personal estate the sum of $50,000, and to invest and keep the same invested during the residue of the lifetime of my daughter, Emeline Dore, wife of John Dore, in bonds and mortgages within the State of New York, or in the public stocks of the United States, or of the State or city of

New York, or of some safe incorporated company ; and that they shall and do apply to the sole and separate use of my said daughter Emeline, for and during the residue of her natural life, on her sole and separate receipt, or to her sole and separate order, free from the debts, control or engagements of her husband, the interest, dividends or other income of the said last-mentioned capital sum of $50,000, when and as the same shall accrue and be by them received.

By the codicil, this clause was altered so far as to increase the capital sum to $125,000, " to be invested, and its income applied in the same time and manner, as if such increased sum had been originally written in the said sixth clause."

*Eighth.* I give, devise and bequeath one equal, undivided sixth part of all and singular the rest, residue and remainder of my property and estate, whatsoever and wheresoever, both real and personal, of which I am now seized or possessed, or of which I may be hereafter seized or possessed, to my before-named executors and trustees, or such of them as shall qualify and take upon themselves the execution of this my will, the survivors and survivor of them, as joint tenants, and not as tenants in common, in trust, nevertheless, to possess themselves of the said equal undivided sixth part of my said residuary estate, and to take, collect and receive the rents and profits thereof, and to apply the same to the sole and separate use of my daughter, Mary, the wife of the said Jonas Phillips Phœnix, for and during the residue of her natural life, on her separate receipt or to her separate order, free from the debts, control or engagements of her husband.

The said residue constituted all of testator's estate, except the amount given by the sixth clause, and portions specifically given to his widow and a sister. By the ninth, tenth, eleventh, twelfth and thirteenth clauses, he made precisely similar provisions for his remaining five children, viz. : Caroline, Samuel S., Henry, Stephen, Jr. and William. The said shares or sixth parts are made fourth parts, by the codicil, in consequence of the deaths of Samuel S. and Stephen, Jr., and the devises are changed by the third clause of the codicil, which is as follows :

*Third* clause of codicil. My sons, Samuel and Stephen, having deceased, leaving no issue nor widow, and my son Henry having left a widow and children, I direct that the shares, or sixth parts of my estate, mentioned in my will, be made fourth parts, namely, in the eighth, ninth and thirteenth clauses containing devises for Mary, Caroline and William ; and I revoke the tenth and twelfth clauses, containing devises to Samuel and Stephen. The gift and devise in the eleventh clause to Henry, and which by reason of his death will be subject to distribution at my decease, under the fifteenth clause, shall be of one fourth of my estate, real and personal, as expressed in the said eleventh clause, subject, however, to an annuity of one thousand dollars per annum, to be paid quarterly to the widow of my son, Henry, Mrs. Maria Whitney, during her life ; for which a part of the fourth part or share of my estate which Henry would have had appropriated to his use, shall be set apart and be held in trust by the executors and trustees during her life.

*Fifteenth.* In reference to the shares of my said six children, named in the eighth, ninth, tenth, eleventh, twelfth and thirteenth clauses of this my will, in my resid-

uary estate therein also named, I do hereby give, devise and bequeath, upon the death of any one of them, and so from time to time as any other or others of them shall die, until and including the death of the last survivor of them, the remainder of the real estate and the capital of the personal estate, constituting the share, during the life, of such child of mine so dying, to all my grandchildren living at the time of the death of such child, absolutely and in fee, they taking *per capita* and not by representation, including the issue of any grandchild or grandchildren then deceased leaving issue then alive, who shall take the same share together, if more than one, which such deceased parent or parents would have taken if living.

*Sixteenth.* I hereby authorize and empower my said executors and trustees, or such of them as may qualify and assume upon themselves the execution of this my will, and the major part of them, and the survivors of them, and the major part of such survivors, from time to time, and at any time or times after my decease, by writing under their respective hands and seals, to appoint three persons to be commissioners to make partition or partitions of my said residuary estate, real and personal, or so much and such parts thereof as my said executors and trustees may from time to time think capable of partition, and to submit to such commissioners, for that purpose, into six equal shares ; and I hereby authorize and empower the said commissioners, and any two of them, to make such partition or partitions, and direct that in making the same they shall, as nearly as conveniently may be, include in each share an equal sixth part of the residuary real estate, and an equal sixth part

of the residuary personal estate, which may be submitted to them for partition by my said executors and trustees as aforesaid ; but as it may happen that this cannot in all cases be conveniently done, they, the said commissioners, are hereby authorized, if they think it necessary, to make up for any inequality in the value of the real estate by means of the personal estate, and I hereby authorize and empower the said commissioners, or any two of them, by deed or deeds under their hands and seals, to set apart the said six shares in severalty, to the trustees of my said six children, named in the eighth, ninth, tenth, eleventh, twelfth and thirteenth clauses of this my will, or in case of the death of any of my said six children at the time of such partition, to the representatives of such children, under this my will, one share to each the representatives of such deceased child or children, to stand in his, her or their place, and to take the share which the trustees of such deceased child or children would have taken if living ; and I hereby declare that the parts or shares so divided and set apart, as aforesaid, to such of my said six children respectively as may be alive at the time of such partition, shall on their deaths respectively be deemed and taken as his, her or their share or shares respectively in my said residuary estate, so far as the same shall at the time have been divided, and such partition and partitions shall be binding and conclusive upon all those who shall be entitled to the same in reversion and remainder.

By the eighteenth clause, the executors and trustees are authorized and empowered, during the continuance of the trusts, to sell and convey all such parts of his real estate as are not situate within the county of New York,

and such parts within the county, as may be vacant and unimproved, at the time of his death; also, "to submit to arbitration or reference any difference or dispute which may arise between them, or any of them, and any legatee or devisee, or any other person or persons."

Decedent died on the 16th of February, 1860. The will was admitted to probate on the 12th of March following.

Phillips Phœnix and George H. Warren, who account as executors herein, are the only surviving executors and trustees under the will.

William Whitney, Ferdinand Suydam and John Dore have died since qualifying.

On the 21st day of March, 1861, the executors and trustees duly appointed three commissioners to make partition of the major part of the residuary estate, real and personal. The commissioners subsequently reported a due partition and setting apart thereof to the trustees, as such.

The aggregate value of the estate then so partitioned was $3,739,655.20. The value of that part not then divided, was, "according to the books of the executor Whitney," $679,767.32, and of the whole "as so ascertained and estimated," $4,419,422.52. Upon this last-mentioned sum, the executors and trustees, on the 23d of April, 1861 (at the end of their first fiscal period of administration, which was one year, two months, and seven days), took, and divided equally among themselves, "and charged in the accounts of the estate," one per cent. as commissions, or the sum of $44,194.22, except a small part thereof, which they took at a later

date, and each gave a receipt therefor in the following words :

"New York, April 23, 1861. Received from the estate of Stephen Whitney $8,826.71, for commissions due me as executor."

(The balance of $60.27 was taken February 26, 1862.)

After the divisions and transfers of 1861 new accounts were opened, and thereafter kept upon a system of annual rests, in the income accounts with the *cestuis que trust;* but it did not appear that they were advised of the system, or objected to it. On the 7th of May, 1866, receipts for commissions were given by each of the four then surviving executors, as follows :

" Received from the executors and trustees under the will of Stephen Whitney, deceased, $4,866.31, being on account of commissions due me, upon income accounts made under the law of May, 1863, from 23d of May, 1863, to February, 1866, without waiver on my part, of fees under act of 1863, claimed to be due on the principal of the estate and trusts, and on income received previous to the 23d of May, 1863, subject to the order of the Surrogate, on the final settlement of the accounts."

The executors and trustees accounted herein for the fund set apart by the commissioners, to produce the annuity of $1,000 for Maria, formerly the widow of testator's son Henry, during her life, and the interest, income, &c., received and paid out therefrom, under the third clause of the codicil. They did not include, in their account, statements of the condition and investment, at the times of distribution, of such portions of the estate, real and personal, as have been finally distributed to those entitled thereto, and the management

of the same until such times ; nor the present condition, investment, and management of all the property and estate not so finally distributed, up to the time of rendering the account. It appeared that they had commenced an action in the Supreme Court, as trustees, against all of the beneficiaries, praying judgment, "that each and every the acts and deeds heretofore committed and done by them, in respect to the residuary estate, real and personal, . . whereof they became possessed as trustees, may be ratified and confirmed by said court, and that said plaintiffs, and each of them, as such trustees and individually, may be released and discharged from all liability or accounting to or with any person in respect thereto."

After providing and setting apart the principal fund of $125,000, for the use of Emeline Dore, the executors and trustees sold two hundred and fifty-six shares of stock of the New York Central Railroad Company, being a portion thereof, at a profit of $3,023.77. John Dore, one of the executors, claimed the profit to belong to his wife. There was a difference of opinion among the executors, and they submitted the question to the then counsel of the estate, who gave a written opinion, that the profit belonged and should be paid to said life-tenant ; whereupon they paid it over to her.

In relation to the amounts taken as commissions, April 23, 1861, the auditor reports as follows :

" It does not appear from the evidence that the amount taken for commissions April 23, 1861, was intended to be in full for specific services, though it was contended before me by the attorneys for the said interested parties, objecting to said account, that such was the intention of

said executors when said commissions were taken." (In the capitalization which was made by them, as a basis upon which to calculate the amount taken as commissions, they included the sum of $47,000, specifically given to Harriet Whitney, the widow of decedent: This, the referee found was improperly included.)

To this finding exception was taken by counsel for legatees.

The auditor further finds as follows:

"That, in my opinion, upon the aforesaid appointments of commissioners, under the provisions of the sixteenth clause of the will of said testator, Stephen Whitney, to make partition of those parts of said testator's residuary estate thereby submitted to them, and upon the execution and delivery of said deeds by said commissioners, the said *executors, as such*, became divested of the property mentioned in said deeds; and the persons named in said deeds respectively as *trustees* under the *eighth, ninth,* and *thirteenth* clauses of said will respectively, as parties thereto of the second part, became thereby and thereupon specifically charged as *trustees* of the property in such deeds respectively mentioned and designated, to carry out the several specific trusts set forth in the said last will and testament of the said testator; and the *executors* of said will, now surviving, in their capacity *as such surviving executors*, having in their said account herein accounted for the administration of all the personal estate of said testator not specifically mentioned and described in said above-recited deeds by said commissioners to said trustees, I am of opinion that the said *surviving executors* were not required to include therein the accounts of their administration of

said *trust estates* in their said capacity of *trustees* thereof. I also find and report that in the above-recited action, now pending in the Supreme Court of the State of New York, it appears that said Phillips Phœnix and George Henry Warren, the plaintiffs therein, as such surviving *trustees*, claim to have accounted fully for their administration of said trust estates, and the said Supreme Court having full jurisdiction thereof, and all the parties interested in said estate having been made parties thereto, and said action appearing to have been instituted in good faith by the said surviving *trustees*, and said complaint praying for an adjustment and settlement of the accounts of said *trustees* of their administration of said separate *trusts*, and the rights of all the parties interested in the said estate being fully protected therein, I am of opinion that it would be inequitable to require such an amendment of the executors' said account in this court as would be necessary if such objections were sustained ; and if such amendment were ordered, it would, in my judgment, entail unnecessary delay and additional expense to the parties interested therein."

To this finding the counsel for legatees excepted, and argued that the said executors, as such, did not, by the execution of the said commissions, become divested of the property and estate set out in the returns and deeds of the commissioners, and that such divesting can only be accomplished by a regular accounting in court ; that, until the determination of this accounting, they hold the estate as executors ; that in every case where the trust relation has terminated by the death of the life-tenant, previous to an accounting, the distribution must be to the remaindermen, as the persons entitled thereto ; that

by not accounting, they have always held and managed
the estate *as executors*, authorized to execute a testa-
mentary trust; that under the Laws of 1850, as
amended by Laws of 1866, they should have set out in
this account and proceeding all the property and estate
which has come into their hands, and the entire manage-
ment and disposition of the same; that having elected
to account herein as to the annuity held in trust for
Maria, Henry's widow, a separate accounting for the
other kindred trusts in another court would be im-
proper; that the commencement of the action in the
Supreme Court, after they had voluntarily instituted
this proceeding, and after objections were filed thereto,
was unwarranted; that the scheme made by the will,
for a division of the estate, worked no severance or
change of their duties, and was only a convenient device
for an impartial division into the shares contemplated by
the will; that the commissioners were but a commis-
sion to divide—unable by law to take a title in trust to
divide; that as they took no title, they gave none, and
created no severance, the executors, as such, continuing
to hold, charged with a trust; that the executors, by the
submission to the commissioners, effected no severance,
and that this court, being of competent jurisdiction to
pass upon all of the accounts, whether trust or other-
wise, they should be required to amend their account as
filed, so as to present a full accounting of their proceed-
ings, whether as executors or testamentary trustees,
down to the date of this accounting.

In relation to the profit on the sale of the stock of the
New York Central Railroad Company, set apart for the
benefit of Emeline Dore, the auditor finds as follows:

"That in my opinion, the said profit so realized by said executors by sale of said stock did not inure to the benefit of said life-tenant, Emeline Dore, under the provisions of said sixth clause of said testator's last will, directing the application to her, said Emeline Dore, of '*the interest, dividends, or other income*' of the capital sum so invested; that the amount of such profit should have been added to the said principal fund so set apart; and that the payment to said life-tenant was erroneous and improper, and the same should be disallowed, and the item of payment thereof should be stricken out of said schedule 'H 1,' page 165 of the account filed herein."

To this finding, exception was taken by counsel for Emeline Dore, who argued, that the submission of the question to the then counsel of the estate, was a binding, legal arbitration of it, under the eighteenth clause of the will; that the executors acted under legal advice, and made the payment thereof to her in good faith, and should be allowed the item. Counsel for the executor also excepted to this finding, but in all other respects moved a confirmation of the report.

WM. B. ROSS, *for executors.*

J. F. KERNOCHAN, *for legatees.*

E. S. DAKIN, *for guardian of legatees.*

S. B. BROWNELL, *for Emeline Dore.*

THE SURROGATE.—The following questions are presented in this matter for determination.

First, whether the executors, as such, on this accounting, should include all their proceedings as the repre-

sentatives of this estate, notwithstanding the will denominates them trustees as well, and they have assumed, in the latter capacity, to deal with the estate under the provisions of the will, and have commenced an action in the Supreme Court for an accounting as trustees, making all the persons interested therein, parties ; and that action is now pending therein.

Second, whether the executors rightfully appropriated the sum above stated, as for their commissions, or on account thereof ; and if not, what, if any, interest thereon should be charged against them.

Third, whether the profits made on the sale of the New York Central Railroad stock, which was a part of the principal sum set apart by the executors, under the sixth clause of the will, and the codicil increasing the same, for the benefit of decedent's daughter Emeline, was properly paid to her as the life-tenant, or belonged and should have been added to the principal.

In respect to the first point, inasmuch as the executors have not included their proceedings under what 'hey claim to be their functions as trustees, as contra-distinguished from their executorship, and as a requisition to include such proceedings, by way of a supplementary account, would involve the expense and delay of another reference and contest; and as the Supreme Court has taken jurisdiction of their accounting as trustees, which embraces the same matters which the contestants claim should have been included in this accounting, and as the latter court has confessedly jurisdiction of the parties and subject matter, I do not deem it my duty to impose such additional delay and expense upon this estate, though I might differ with the Supreme Court, as to the

13

propriety of its taking cognizance of the case, or as to their liability to account as trustees, before they shall have accounted in this court as executors : especially as this court had control of, and was proceeding in, their accounting in the latter capacity, when the executors, claiming to be trustees, initiated their proceedings in that court.

But it is my duty to say that where executors are charged with trust duties, they should, as a general rule, when finally accounting as executors, include all their proceedings in their administration of the estate, in whatever capacity they have acted, for, until they have so accounted and been discharged, they may reasonably be assumed to have acted in their capacity of executors, under the authority of their letters, and I am not prepared to say, that in this case, a different rule should be adopted.

It is urged, with great earnestness, by the counsel for the executors, that by the sixteenth clause of the will they are charged with so much of the estate as was partitioned, by the commissioners appointed for that purpose, pursuant to that clause, and that they derived a title thereto under the conveyance of said commissioners, and not under the will of the testator directly. This seems to me a forced and unnatural suggestion. For, while that clause does, in terms, empower said commissioners to set apart, by deed, the shares in severalty to the trustees, yet I do not understand that the commissioners are, by the terms of that clause, vested with any title to the property, but that they are simply the instruments or agents of the parties interested, for the purpose of making the division. As well might it be said that, by the language of the section, when the com-

missioners were directed, in case they could not partition the property equally, to make up for the inequality in value by means of the personal estate, they were vested with authority over the personal estate for that purpose. The rational construction is, that they should fix the difference in value, and the executors, who are vested with the control of the personalty, should equalize the shares therewith.

In Wheelright *v.* Wheelright (2 *Redf.*, 501), the question of the right of executors to voluntarily appropriate the funds of the estate, on account of their commissions, without any settlement of their account, or allowance of such commissions, by the Surrogate, was carefully considered ; and it was held that they had no such authority, and that, as a general rule, they are chargeable with interest on the amount thus appropriated, to the time when the account was settled. But in that case, under special circumstances, they were exonerated from paying interest. In this case, there seem to be no circumstances to justify such exoneration. Such appropriation must be held to have been a misappropriation of the funds of the estate, to the personal use of the executors. But, as there seems to be no proof, in this case, of gross delinquency, or intentional violation of duty, I am of the opinion that they are not properly chargeable with compound interest. (Tucker *v.* McDermott, 2 *Redf.*, 312, and cases there cited.)

In respect to the profit realized on the sale of the New York Central Railroad stock, I am of the opinion that as the same is in no sense income or dividend of stock, or otherwise, on the principal sum invested for the benefit of Emeline Dore during her life, and bequeathed

to remaindermen, the profit so made did not belong to the life-tenant as income, but to the principal fund, in which she was entitled to the interest, income or dividends. The counsel seeking to sustain the payment to the life-tenant, cites numerous authorities, which appear to turn upon the use, in the will, of the term "dividends," and which hold that such term includes ordinary, and, in some cases, extraordinary dividends. The proceedings of said railroad company, declaring an extra stock dividend, are cited, doubtless, for the purpose of showing that the profit realized on such sale was in consequence of such extra dividend. But those proceedings were had many months after the sale of the stock in question ; and I am not able to perceive what this could have had to do with the sale of the stock long previous. See Matter of Pollock (3 *Redf.*, 101), commencing at page 108, where the authorities upon the question are fully considered.

But, it is claimed by the respective counsel for the parties excepting to the disallowance, by the auditor, of the payment, that the submission of the question to Mr. Paris, the then counsel for the estate, was under the eighteenth clause of the will, and that his decision was therefore conclusive upon all of the parties. I am inclined to the opinion, that this position cannot be sustained, for two reasons. First, because it appears that Mr. Paris was then the counsel for the executors representing all the interests under the will. It does not seem to me that he could have been an impartial arbiter between the executors, so representing all the interests, and a legatee who made a claim to the fund in question in hostility to the rights of the remainderman. Second,

because while I entertain no doubt of the validity of the submission, though made by parol (see Wells *v.* Lain, 15 *Wend.*, 99 ; Diedrick *v.* Richley, 2 *Hill*, 271 ; Valentine *v.* Valentine, 2 *Barb. Ch.*, 430), yet, I am of the opinion, that there was not such a submission of the question, as was contemplated by the will. For the evidence shows that Mr. Dore, one of the executors, assumed to act in the double capacity of executor and agent for his wife, the life tenant, with no positive evidence of his authority so to act, except, perhaps, such as is furnished by her acceptance of the fund under a favorable decision. I am entirely clear in the opinion that Mr. Dore could not legally occupy the anomalous position of plaintiff and defendant.

Suppose, as an illustration, that he had been the sole surviving executor and trustee, is it possible that he would then be permitted to act for the estate, representing the interest of all the parties, and also for a legatee, making a claim against him as such representative in hostility to other beneficiaries whose interests he, as such representative, was bound to protect ?

I am therefore of the opinion, that for the reasons above stated, the auditor's report should be confirmed, with the modification above suggested, that the executors be charged interest upon the sum which they assumed to appropriate for their commissions without authority, from the 23d of April, 1861, and the 26th of February, 1862, the dates when it was so taken, to the time of the entry of the decree herein.

Ordered accordingly.

Subsequently, upon the presentation of the final decree in this matter, certain amendments were proposed, which were disposed of as follows:

THE SURROGATE.—The first amendment proposed to the decree, submitted by the executors' counsel, should be, in my opinion, substantially approved. There seems to be no doubt that the executors joined in the misapplication of the assets of the estate denominated by them commissions. They were all privy to the proceeding, and participated in it, instead of any remonstrating against it. (Sutherland v. Brush, 7 Johns. Ch., 17; Manahan v. Gibbons, 19 Johns., 427; Mesick v. Mesick, 7 Barb., 120; Wood v. Brown, 34 N. Y., 337, 343; 2 Williams on Ex., 1548.)

In Johnson v. Corbett, 11 Paige, 265, it was held that an administrator who suffered or permitted his co-administrator to misapply the funds of the estate when he had the power to prevent it, was liable in equity for such misapplication. (Brown's Acc'ng, 16 Abb. Pr. N. S., 457.) In Adair v. Brimmer, 74 N. Y., 539, at p. 566, Judge RAPALLO cites Clark v. Clark, 8 Paige, 153, to the point that, when an executor, by his negligence, suffers his co-executor to receive and waste the estate, being able to prevent it, he is liable to the beneficiaries for the waste. Williams on Executors, p. 828, holds that the indemnity clause in the will does not exonerate the co-trustee or executor.

These authorities leave no doubt in my mind, that the fund withdrawn as commissions, should be returned as assets of the estate, together with the interest thereon, and that if any failure to reimburse the surviving executors for the sum so misappropriated "by the deceased executors" shall result, the survivors must be held lia-

ble therefor.   Nevertheless, they will be entitled to re-imburse themselves to the extent of any sum which shall be awarded to the representatives of said deceased exec-utors, by way of commissions.

On the question as to the rate of interest, I see no rea-son to change my view, as suggested in the opinion al-ready handed down.   The rule is universal that ad-ministrators, executors and trustees are chargeable, with the full rate of interest on the funds of the estate which they mingle with their own funds, and subject to the hazards of their individual business.

What was the appropriation of the funds of this estate, by the respective executors, under the guise of commis-sions, but a conversion of such funds to their use?

If they had withdrawn so much of the funds, and in-vested them for the benefit of the estate, in apparent good faith, though on inadequate securities, the princi-ple would be different, for then it would not be subjected to the jeopardy of their respective business enterprises, or appropriated as their own.

The suggestion of the insolvency of some of the estates of the deceased executors, is the most apt enforcement of the fact of the impropriety of this unlawful jeoparding of the estate.

My attention has been called to cases in which trustees have been charged a reduced rate of interest.

The leading case in this country is King v. Talbot (40 N. Y., 76).   An examination of it will distinguish it from the one under consideration in a material respect. That was a case where trustees had invested trust funds in securities disapproved by the court, and the court charged the executors six per cent., with annual rests,

upon the ground that it appeared that they had acted in good faith, but made an honest mistake. This case was followed by the Court of Appeals, in Adair v. Brimmer, above cited. It is suggested that the fact that the current rate of interest is now but six per cent. in this state, should induce the charge of a less rate of interest than seven per cent. But the answer to that is, if I am right in holding that the executors unlawfully misappropriated the so-called commissions, their liability for repayment with the current rate of interest immediately attached, and must continue until the liability is discharged.

Ordered accordingly.